Hall, J., concurs in part and dissents in part, and votes to reverse the judgment, on the law, grant those branches of the defendant’s omnibus motion which were to suppress the gun and the knife, and dismiss the entire indictment, with the following memorandum: I agree with my colleagues in the majority that the Supreme Court should have suppressed the gun that was recovered from the defendant’s car. However, I would go further and conclude that the court also should have suppressed the gravity knife that was recovered from the defendant’s person, as the People failed to establish that the stop of the defendant’s vehicle was lawful. At the suppression hearing, Police Officer Kenneth Sepulveda testified that on July 4, 2013, he was a passenger in an unmarked police vehicle driven by Police Officer Joseph Algerio. At approximately 10:25 p.m., the police vehicle was stopped at a red light facing eastbound on Dunkirk Street toward Murdock Avenue when Officer Sepulveda observed the defendant’s vehicle, a gray Infiniti, make a left turn from Murdock Avenue and head westbound on Dunkirk Avenue. According to Officer Sepulveda, the defendant’s vehicle had illegal “window tints.” Officer Sepulveda explained that “[a]ny-thing under 70 percent light transmittance is a summonsable offense” (see Vehicle and Traffic Law § 375 [12-a] [b]). When Officer Sepulveda was asked how he knew that the light transmittance of the defendant’s windows was less than 70%, he responded that it “was hard for me to see inside the vehicle.” Officer Sepulveda said that he had no training regarding window tinting, but he had experience because he had written “hundreds of tints summonses and stopped thousands of cars with illegal tints.” After the defendant’s vehicle passed the police vehicle, Officer Algerio made a U-turn and pulled the defendant’s vehicle over. Officer Sepulveda approached the front passenger side of the defendant’s vehicle, while Officer Algerio approached the driver’s side. Officer Algerio instructed the defendant to put down all of his windows, and the defendant put down his driver’s side window. Officer Sepulveda pointed his flashlight into the passenger side window, and through that window was able to observe a dagger stuck in between the passenger seat and the center console, and a baseball bat by the defendant’s left foot. Officer Sepulveda could not remember whether the passenger side window was up or down when he looked through it to see the dagger and the bat, but when he was asked how he was able to see inside the vehicle, he said he had a “very, very strong flashlight.” The officers then removed the defendant from the vehicle and placed him in handcuffs. While frisking the defendant, the officers recovered an illegal gravity knife in his pocket. The defendant was then placed under arrest, and a gun was later recovered during an inventory search of the defendant’s car. At trial, Officer Algerio testified that he did not have a tint meter with him on patrol on the day of the defendant’s arrest, and that the police did not verify the extent of the tint on the defendant’s car. At the conclusion of the People’s case, the court dismissed the sixth count of the indictment, which charged the defendant with operating a motor vehicle with a tinted window in violation of Vehicle and Traffic Law § 375 (12-a) (b), on the ground that the People had failed to make out a prima facie case with respect to that count. “On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance” (People v Oden, 150 AD3d 1269, 1270 [2017] [internal quotation marks omitted]; see People v Berrios, 28 NY2d 361, 367-368 [1971]). In order to legally stop a motor vehicle, a police officer must have “at least a reasonable suspicion that its occupants had been, are then, or are about to be, engaged in conduct in violation of law” (People v Sobotker, 43 NY2d 559, 563 [1978]). I acknowledge that a police officer’s observation of the windows of a vehicle may, under certain circumstances, support a reasonable suspicion that the windows were overly tinted in violation of Vehicle and Traffic Law § 375 (12-a) (b) (see People v Estrella, 10 NY3d 945, 946 [2008]; People v McKane, 267 AD2d 253 [1999]; People v Edwards, 222 AD2d 603, 604 [1995]). However, in my view, under the circumstances of this case, Officer Sepulveda’s observations were not sufficient to support such a reasonable suspicion. Officer Sepulveda stated that the basis for his suspicion was that it “was hard for me to see inside the vehicle.” In my view, the mere fact that it is hard to see inside a vehicle that is moving at night is not sufficient to support a reasonable suspicion that the vehicle’s windows had a light transmittance of less than 70% in violation of Vehicle and Traffic Law § 375 (12-a) (b). Accordingly, I submit that both the gravity knife and the gun should have been suppressed as fruit of an illegal stop of the defendant’s vehicle. Since, without that evidence, the People would be unable to adduce legally sufficient evidence to prove the defendant’s guilt of the crimes charged, I vote to dismiss the entire indictment (see People v Theodore, 114 AD3d 814, 818 [2014]).